**FILED**

NOV 0 7 2007

11-7-07

**MICHAEL W. DOBBINS**
**CLERK, U.S. DISTRICT COURT**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER GROOMS, | ) | |
| EDDIE BRANTLEY, | ) | |
| STANLEY HUNTER, | ) | |
| UYLONDA HENDERSON, and | ) | |
| ALLISAH LOVE | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| | ) | Case No.        07C 6176 |
| v. | ) | |
| | ) | Judge  Andersen |
| CITY OF CHICAGO POLICE OFFICERS | ) | |
| DAVID TENCZA, #9203, | ) | Magistrate Judge Valdez |
| WATACH, #19973, | ) | |
| SERGEANT LEE, #909, and | ) | |
| THE CITY OF CHICAGO, | ) | |
| | ) | Jury Demanded |
| Defendants. | ) | |

### NOTICE OF FILING

**TO:**    City of Chicago Police Officers:          The City of Chicago
David Tencza, #9203                               c/o
Michelle Wantuck, #19973                   The City of Chicago Corporation Counsel
Sergeant John Lee, #909                     30 N. LaSalle Street, Suite 1020
City of Chicago Police Headquarters     Chicago, Illinois 60602
3510 South Michigan Avenue
Chicago, Illinois 60653

On Wednesday, November 7th, 2007, at the United States District Court, Northern District of Illinois, Eastern Division, 219 South Dearborn Street, Chicago, Illinois; Plaintiff Allisah Love filed **PLAINTIFFS SUPPLEMENTAL INFORMATION TO COMPLAINT**.

Allisah Love
P.O. Box 4853
Chicago, Illinois 60680
(312) 756-9329

### PROOF OF SERVICE

I, the undersigned plaintiff, certify that on the 7th day of November, 2007, I served a copy of this notice to each person to whom it is directed by way of hand delivery and/or U.S. Mail before the hour of 5 pm.

_____                    7 November 2007
Signature/Certification                                             Date



FILED
NOV 0 7 2007
11-7-07
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| CHRISTOPHER GROOMS, <br> EDDIE BRANTLEY, <br> STANLEY HUNTER, <br> UYLONDA HENDERSON, and <br> ALLISAH LOVE <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF CHICAGO POLICE OFFICERS <br> DAVID TENCZA, #9203, <br> WATACH, #19973, <br> SERGEANT LEE, #909, and <br> THE CITY OF CHICAGO, <br><br> Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case No.        07C  6176

Judge Andersen

Magistrate Judge Valdez

Jury Demanded

## PLAINTIFFS SUPPLEMENTAL INFORMATION TO COMPLAINT

1.      Now comes the Plaintiff Allisah Love, providing supplemental information to the complaint filed on November 1st, 2007 with the United States District Court, Northern District of Illinois, Eastern Division; case 07C 6176.

2.      The supplemental information provided is a letter detailing the account of the incident on October 23, 2007, which resulted in the arrest of Plaintiff Christopher Grooms and the impoundment of Plaintiff Uylonda Henderson's vehicle.

3.      This letter was drafted to aid in the investigation of the complaint (log # 1010366) made by Plaintiffs Christopher Grooms, Eddie Brantley, and Stanley Hunter against several City of Chicago police officers.   The complaint was filed with the Office of Professional Standards on October 23, 2007; the date of the incident.

4.      The attached letter was sent by certified mail to Ms. Ilana B. R. Rosenzweig, Chief Administrator of the Office of Professional Standards for the City of Chicago; and also to Assistant Deputy Superintendent Debra Kirby, of the Internal Affairs Division of the City of Chicago Police Department on November 1st, 2007.

5.      The Office of Professional Standards has forwarded the complaint (log #1010366) to the Internal Affairs Division of the City of Chicago Police Department for further investigation.

6.      Plaintiffs contend that the supplemental information provided will assist this court and the Honorable Wayne R. Andersen with a better understanding of what triggered the filing of this case in federal court, as well as Plaintiff Uylonda Henderson's motivation in filing a MOTION FOR EMERGENCY APPEARANCE AND ORDER on November 6th, 2007.

**WHEREFORE,** Plaintiff Allisah Love respectfully submits to this court for review, PLAINTIFFS SUPPLEMENTAL INFORMATION TO COMPLAINT.

Respectfully Submitted

Allisah M. Love
_____
Allisah Love
Pro se Plaintiff

Allisah Love
P.O. Box 4853
Chicago, Illinois 60680
(312) 756-9329

Christopher Grooms
P.O. Box 490136
Chicago, Illinois 60649

Eddie Brantley
1110 W. 50th Street, Apt. NN
Chicago, Illinois 60609

Stanley Hunter
5001 S. Morgan
Chicago, Illinois 60609

**Ms. Ilana B. R. Rosenzweig**
Chief Administrator
Office of Professional Standards
10 W. 35th Street, 12th Floor
Chicago, Illinois 60616

**Reference:** Log No. 1010366

**Assistant Deputy Superintendent Debra Kirby**
Internal Affairs Division
3510 S. Michigan Avenue, 5th Floor
Chicago, Illinois 60653

1 November 2007

**Dear Ms. Rosenzweig and Ms. Kirby,**

The following is an account of an incident that occurred on October 23, 2007, whereby three innocent young men, none of which have criminal records, were unlawfully stopped, searched and detained by Chicago Police officers. When nothing was found to connect these young men to a crime; a police officer then planted drugs in the vehicle that they were driving; resulting in the arrest of the back seat passenger and impoundment of the vehicle.

These are very SERIOUS acts of misconduct by Chicago Police Officers with very SERIOUS ramifications. Therefore this incident needs to be investigated THOROUGHLY.

The Office of Professional Standards has recently been placed under the direct jurisdiction of the Mayor's Office because of past problems with investigations and conflicts of interest.

The Mayor's office also has a list of approximately 662 Chicago Police Officers, each with more that ten complaints against them over a five year period.

There have been many Chicago Police Officers that have been charged with and convicted of planting drugs on suspects and drug conspiracy.

We ask that in light of these facts and the incident being reported, that a meticulous, exhaustive, and extremely professional investigation take place.

## ACCOUNT OF THE INCIDENT ON OCTOBER 23, 2007

During the early morning hours of October 23, 2007; Eddie Brantley, Stanley Hunter and Christopher Grooms were driving in the vicinity of 49th and Union Streets when they were stopped by several marked police cars.

Eddie Brantley drove a red PT Cruiser, license plate number 8499813, belonging to his mother, Uylonda Henderson. Stanley Hunter rode in the front passenger seat of the vehicle, while Christopher Grooms rode in the back.

Between seven to eight marked police cars surrounded the PT Cruiser. The police car that pulled in front of the PT Cruiser shined a bright light into it.

A female Caucasian police officer, Michelle Wantuck, star #19978, approached the driver's side of the PT Cruiser and her partner, a male Caucasian police officer, approached the passenger side.

Officer Wantuck asked driver Mr. Brantley for his license and registration.

Mr. Brantley informed Officer Wantuck that in rushing to pick up a friend who was having car trouble, he forgot to bring identification. However, Mr. Brantley informed Officer Wantuck that he had an SR22 proof of insurance in the car, and that the vehicle belonged to his mother Uylonda Henderson, whose purse, identification and vehicle information were in the car.

When Mr. Brantley asked why he had been stopped by the police, he received no answer.

Officer Wantuck told Mr. Brantley to step out of the vehicle, and her partner told Mr. Hunter to do the same. Then the partner shined a light into the back of the vehicle where Mr. Grooms was seated, and told him to exit also.

After exiting the PT Cruiser, Mr. Brantley, Mr. Hunter and Mr. Grooms were told to walk to the front of the car and place their hands on the hood.

Officer Wantuck frisked Mr. Brantley, her partner frisked Mr. Hunter, and another male Caucasian police officer came over and frisked Mr. Grooms.

The police officer that frisked Mr. Grooms removed his identification and looked through them. This included a state ID, a military dependent's ID, a library card and a credit card. The officer that frisked Mr. Grooms took the state ID and sat it on the hood of the car, after which Officer Wantuck retrieved it.

Both during and after being frisked, Mr. Brantley, Mr. Hunter and Mr. Grooms observed a few male Caucasian police officers search the PT Cruiser twice. One of the police officers that had been searching the vehicle asked Mr. Brantley, Mr. Hunter and Mr. Grooms if they had anything in the vehicle; implying anything *illegal*; to which they each replied no.

After the PT Cruiser had been searched twice and turned up nothing, Officer Wantuck took Mr. Brantley over to a police car and sat him in the back of it. Mr. Hunter and Mr. Grooms were taken to a different police car and placed in the back of it.

In the meantime, three to four of the marked police cars that had initially helped to surround the PT Cruiser left the scene, including a male Asian officer, Sergeant John Lee, star #909.

While sitting in the back of the police car; Mr. Brantley noticed that the Police Data Terminal (PDT), or computer in the front of the police car, showed auto theft on it.

Officer Wantuck had Mr. Brantley's mother's work ID, vehicle registration, and other information obtained from the PT Cruiser. Officer Wantuck asked Mr. Brantley if his mother knew that he had her car; to which he replied yes.

Mr. Brantley provided Officer Wantuck with both his mother's phone number and his grandfather's phone number to verify not only his identity, but the identity of the other passengers, as well as ownership of the PT Cruiser.

Officer Wantuck was unable to reach Mr. Brantley's mother, but afterward did call and speak to Mr. Brantley's grandfather, Cleveland Henderson.

Cleveland Henderson gave Officer Wantuck a description of the PT Cruiser; information on his daughter Uylonda Henderson, the owner of the vehicle; verified the identity of his grandson, Eddie Brantley, the driver; and also the identity of the other passengers.

After conclusion of the phone call with Mr. Henderson, Officer Wantuck got out of the police car and approached her partner and some of the other police officers standing around.

Officer Wantuck told the other officers that Mr. Brantley was clean and that his story checked out.

After hearing this, three of the officers began searching the PT Cruiser again. After they finished, Mr. Brantley witnessed another officer, later identified as Officer David Tencza, star #9203, pull something from underneath his vest as he leaned over to look in the rear of the PT Cruiser.

Shortly thereafter, Officer Tencza announced to the other officers that he had found something in the car and held up a clear plastic bag with something in it. He told them that it was in the side of the rear door of the vehicle.

Officer Tencza then walked over to the police car where Mr. Hunter and Mr. Grooms were sitting and asked them "Whose baby powder is this?" to which Mr. Grooms asked him "What are you talking about?"

Officer Tencza asked the same question again; to which both Mr. Hunter and Mr. Grooms replied "I don't know."

Then, Officer Wantuck and another police officer came over to question Mr. Hunter and Mr. Grooms. One officer asked them "Whose cocaine is this?" to which both Mr. Hunter and Mr. Grooms replied that they did not know.

Officer Wantuck then told Mr. Grooms that it must be his, as he was the closest one to where it was found.

Officer Wantuck then got into the front passenger side of the police car that Mr. Hunter and Mr. Grooms were sitting in, and ran Mr. Grooms' name in the computer.

While Officer Wantuck ran the name, Officer Tencza removed Mr. Grooms from the back of the police car and cuffed him.

After cuffing Mr. Grooms, Officer Tencza took him over to the police car that Mr. Brantley was in.  Officer Tencza took Eddie out first, then put Mr. Grooms in the back and closed the door.

When Mr. Brantley asked Officer Tencza why Mr. Grooms was being arrested, Officer Tencza showed Mr. Brantley the plastic bag and said "We found this in your car."

Mr. Brantley immediately told Officer Tencza "You didn't find that my car, don't none of us use drugs.  You can give us a drug test."

Officer Tencza then asked Mr. Brantley "Whose drugs are they, then?" to which Mr. Brantley replied "They must be yours.  We don't do drugs and we didn't have no drugs."

When Mr. Brantley asked Officer Tencza what his name was, because at the time no name plate was visible, Officer Tencza refused to give his name.

By this time, Officer Wantuck had approached and said "If he (referring to officer Tencza) found drugs in the car, there were drugs there."

Officer Wantuck then took Mr. Brantley to the car that Mr. Hunter was in, while Officer Tencza drove off with Mr. Grooms, headed to the ninth district police station at 35th and Lowe Streets.

Officer Wantuck asked Mr. Brantley and Mr. Hunter if they wanted to walk home from there or did they want a ride to the ninth district police station.

Confused, Mr. Brantley asked "What do you mean?  I'm going to drive home." To which Officer Wantuck replied "This car is being impounded because drugs were found."

Mr. Brantley and Mr. Hunter contended once again that none of them had drugs and that the whole stop and arrest was bogus.

Mr. Brantley and Mr. Hunter rode to the ninth district police station at 35th and Lowe Streets with Officer Wantuck and her partner.

Back at the station, Mr. Grooms had been taken to a lock up room and brought a plastic bag to put his personal belonging in.

When Mr. Brantley and Mr. Hunter arrived at the station, they stood in the waiting area awaiting paperwork on the impounded vehicle.

Mr. Brantley used Mr. Hunter's cell phone to call his grandfather, Mr. Henderson, and tell him what happened.

When Officer Wantuck overheard Mr. Brantley tell his grandfather that the police had planted drugs in the car; Officer Wantuck came up to Mr. Brantley, snatched the cell phone and terminated the call.

"We didn't plant drugs in that car." Officer Wantuck said to Mr. Brantley "Don't make this any worse."

Mr. Brantley demanded that Officer Wantuck give him the phone back, as he was a free man and not under arrest. He also said that he would go outside and finish the call, but she had no right to take the phone.

Officer Wantuck gave the phone back to Mr. Brantley; after which he and Mr. Hunter went outside of the police station and called his grandfather back.

Mr. Brantley and Mr. Hunter then walked home to 1110 W. 50th Street from the police station at 35th and Lowe.

Back at the ninth district police station, in the room where Mr. Grooms was being held; three officers, including the arresting officer, Tencza, were present. A chubby bald officer was typing something into a computer, another officer, who looked of mixed race, was writing something at a table, and Officer Tencza was sitting in a chair.

The chubby, bald officer that was typing at the computer said to the others "This plate came back to a Honda." He then asked the racially mixed looking officer if he was sure that the plate number was correct.

The racially mixed looking officer looked at a report and verified the plate number written.

Sergeant Lee, who had previously been at the scene of the incident and left; entered the room and asked what Mr. Grooms was in for.

The racially mixed officer sitting at the table said "cocaine."

Sergeant Lee picked up the bag and looked at it; after which he said "This isn't coke. This is heroin."

The chubby, bald officer told Sergeant Lee that it looked like coke so that's what he had put it down as.

When Sergeant Lee asked the officers where the drugs had been found, Officer Tencza replied "They said *I* put it in the car. I should start carrying 8 gram bags instead of 2 grams."

When Mr. Brantley and Mr. Hunter reached 1110 W. 50th Street; Mr. Brantley's grandfather, Cleveland Henderson, had already reached Mr. Brantley's mother, Uylonda Henderson, and told her what happened.

Then Mr. Brantley received a call from Mr. Grooms at the police station. Mr. Grooms asked Mr. Brantley to come back to the ninth district station to pick up his inventory; as the police were going to transfer him to the first district police station at 18th and State Street for fingerprinting.

Mr. Brantley and Mr. Hunter got into Mr. Hunter's car and went back to the ninth district police station to retrieve Mr. Grooms' inventory before his transfer.

When Mr. Brantley and Mr. Hunter reached the station, they parked on the street and went inside.

Mr. Brantley went to the front desk and told an older Caucasian woman that he had received a call to come and pick up the inventory of Christopher Grooms.

Officer Wantuck entered from anther part of the station, approached Mr. Brantley and asked him if he had calmed down yet. Officer Wantuck also told the woman at the front desk that Mr. Brantley was the driver of the vehicle.

Mr. Brantley told Officer Wantuck that he had nothing to discuss with her and that he was there to pick up Christopher Grooms' inventory.

Officer Wantuck came close to Mr. Brantley's face and asked if he was disrespecting her.

Mr. Brantley again said he had nothing to say to her.

Officer Wantuck then left out of the front door of the police station.

Shortly thereafter, Officer Tencza entered from the same part of the station that Officer Wantuck had previously, and gave Mr. Brantley Mr. Grooms' inventory. Officer Tencza also gave Mr. Brantley a bond slip.

Mr. Brantley and Mr. Hunter then left the police station exiting through the front door.

As they started walking to Mr. Hunter's car, Officer Wantuck began following them. Mr. Brantley immediately took out a cell phone to call his mother.

Officer Wantuck kept calling out to Mr. Brantley "Are you disrespecting me?" to which Mr. Brantley said nothing, and continued to make his call.

When Officer Wantuck caught up to Mr. Brantley and Mr. Hunter, she told Mr. Brantley that she was taking him in for disrespect to an officer and a traffic violation.

Mr. Brantley gave Mr. Hunter the cell phone.

The older woman from the front desk had come outside, possibly after she had heard Officer Wantuck yelling.

Officer Wantuck cuffed Mr. Brantley, took him back inside the police station, and placed him in the room where Mr. Grooms was being held.

Soon after that, Mr. Grooms was taken out of the room and placed in the back of a police car for transport to the first district police station at 18th and State Street.

Mr. Hunter left the police station and headed home after calling Mr. Brantley's mother to tell her what happened.

Officer Wantuck also called Mr. Brantley's mother after placing him in the lock up room. Officer Wantuck told Uylonda Henderson that her son had been arrested and that she needed to come to the ninth district police station with identification for her son and $100 in bond.

Ms. Henderson asked Officer Wantuck why her son was all of a sudden arrested when he was called to come and pick up Christopher Grooms' things. She also told Officer Wantuck that she was NOT coming down to the station and if they did not release her son, she would file a complaint and go straight to Operation Push.

Following the phone call to his mother; Officer Wantuck went to the room where Mr. Brantley was being held to talk with him.

Mr. Brantley said that he had nothing to say to her and that she could do whatever she wanted to; but to know that he had taped her on the cell phone he gave back to Mr. Hunter.

Officer Wantuck left the room after which another male Caucasian officer entered to speak with Mr. Brantley.

Mr. Brantley told this officer that he had done nothing; he was placed under false arrest and again that he had recorded Officer Wantuck on a cell phone.

This officer told Mr. Brantley that it appeared things had gotten out of hand and that he would talk to Officer Wantuck to see about letting him go.

Shortly thereafter, Officer Wantuck came into the room, apologized to Mr. Brantley and released him.

Mr. Brantley then called Mr. Hunter to come back to the ninth district police station to pick him up and take him to his mother's house.

Uylonda Henderson later came to the ninth district station to retrieve some of the articles taken from her vehicle by police.

While complaining about the incident, the impoundment of her car, and the arrest of Mr. Grooms as well as her son, Ms. Henderson entered into a discussion with Sergeant Lee.

Sergeant Lee told Ms. Henderson that he had seen drugs being retrieved from the back seat of her car at the scene of the incident.

Ms. Henderson asked Sergeant Lee how he could have possibly seen this, when she had been told that he had left the scene of the incident BEFORE the alleged drugs were found. She also asked how he could say that they were found on the seat when she had been told that the arresting officer said that they had been found on the side of the rear car door.

On the morning of October 23, 2007; Eddie Brantley, Stanley Hunter and Christopher Grooms were stopped, searched, and unlawfully detained without probable cause or reasonable suspicion by several Chicago police officers.

In United States Criminal law, probable cause refers to the standard by which a police officer may make an arrest, conduct a personal or property search or obtain a warrant based upon evidence or a reasonable belief that a crime has been committed.

Reasonable suspicion is a legal standard in United States law by which a police officer concludes that a person or persons has been, is or is about to be, engaged in criminal activity based upon specific and articulable facts and inferences; such suspicion is not a mere hunch.

No one gave the Chicago police permission to search Uylonda Henderson's PT Cruiser. Furthermore, after the vehicle had been searched THREE times and turned up nothing; Officer David Tencza fabricated the evidence on which he made his arrest of Christopher Grooms. This act was witnessed by Eddie Brantley.

There was, therefore, no lawful basis for the stop and search of the vehicle Eddie Brantley was driving; nor the arrest Christopher Grooms; nor the arrest and later release of Eddie Brantley.

The members of the Chicago Police Department involved in this incident engaged in malicious activity and gross misconduct of their duties as police officers. They therefore should be held accountable for their actions.

Respectfully Submitted

Christopher Grooms

Eddie Brantley

Stanley Hunter