IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER GROOMS,<br>EDDIE BRANTLEY,<br>STANLEY HUNTER,<br>UYLONDA HENDERSON, and<br>ALLISAH LOVE | )<br>)<br>)<br>)<br>) | **FILED**<br>NOV 2 8 2007<br>11-28-2007<br>MICHAEL W. DOBBINS<br>CLERK, U.S. DISTRICT COURT |
| Plaintiffs, | )<br>) | |
| | ) | Case No.   07C 6176 |
| v. | )<br>) | Judge Andersen |
| CITY OF CHICAGO POLICE OFFICERS<br>DAVID TENCZA, #9203,<br>MICHELLE WANTUCK, #19973,<br>SERGEANT JOHN LEE, #909, and<br>THE CITY OF CHICAGO, | )<br>)<br>)<br>)<br>) | Magistrate Judge Valdez |
| | ) | Jury Demanded |
| Defendants. | ) | |

## NOTICE OF FILING

**TO:**   City of Chicago Police Officers:        The City of Chicago
         David Tencza, #9203                      c/o
         Michelle Wantuck, #19973                 The City of Chicago Corporation Counsel
         Sergeant John Lee, #909                  30 N. LaSalle Street, Suite 1020
         City of Chicago Police Headquarters      Chicago, Illinois 60602
         3510 South Michigan Avenue
         Chicago, Illinois 60653

On Wednesday, November 28th, 2007, at the United States District Court, Northern District of Illinois, Eastern Division, 219 South Dearborn Street, Chicago, Illinois; Plaintiff Allisah Love filed **PLAINTIFFS MOTION TO PRESERVE THE HARD DRIVE PLUS ENTRIES VIA COMPUTER FROM THE CITY OF CHICAGO FOURTH DISTRICT POLICE STATION AND SECURITY CAMERA HARD DRIVE FROM THE CITY OF CHICAGO AUTO POUND.**

                                                  Allisah Love
                                                  P.O. Box 4853
                                                  Chicago, Illinois 60680
                                                  (312) 756-9329

## PROOF OF SERVICE

I, the undersigned plaintiff, certify that on the 28th day of November, 2007, I served a copy of this notice to each person to whom it is directed by way of hand delivery and/or U.S. Mail before the hour of 5 pm.

_____                         28 November 2007
Signature/Certification                           Date

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

CHRISTOPHER GROOMS,　)
EDDIE BRANTLEY,　)
STANLEY HUNTER,　)
UYLONDA HENDERSON, and　)
ALLISAH LOVE　)
　)
　　Plaintiffs,　)
　)
v.　)　Case No.　07C 6176
　)
　)　Judge Andersen
CITY OF CHICAGO POLICE OFFICERS　)
DAVID TENCZA, #9203,　)　Magistrate Judge Valdez
MICHELLE WANTUCK, #19973,　)
SERGEANT JOHN LEE, #909, and　)
THE CITY OF CHICAGO,　)
　)　Jury Demanded
　　Defendants.　)

**FILED**
NOV 2 8 2007 4M
11-28-2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## PLAINTIFFS MOTION TO PRESERVE THE HARD DRIVE PLUS ENTRIES VIA COMPUTER FROM THE CITY OF CHICAGO FOURTH DISTRICT POLICE STATION AND SECURITY CAMERA HARD DRIVE FROM THE CITY OF CHICAGO AUTO POUND

1.　Now comes the Plaintiff Allisah Love, requesting that this honorable court grant her motion to preserve the hard drive plus entries via computer from the City of Chicago Fourth District Police Station from the computer used to generate and edit the police report RD# HN719256 and the security camera hard drive from the City of Chicago Auto Pound. The following substantiates Plaintiffs request:

2.　On October 23, 2007, Plaintiff Uylonda Henderson's vehicle was impounded on false charges of drug possession.

3.　The lab results of the alleged controlled substance, which was planted in Plaintiff's vehicle by Defendant David Tencza, came back negative; meaning the substance tested was not a narcotic.

4.　Plaintiff Uylonda Henderson could not afford to pay the impound fee for the release of her vehicle; so it remained at the City of Chicago Auto Pound, located at 10301 South Doty Avenue, until after the Administrative Hearing regarding her vehicle was concluded.

5.　On November 19, 2007, Plaintiffs Uylonda Henderson and Allisah Love went to 400 West Superior Street in Chicago, to attend the Administrative Hearing, scheduled for 3 p.m., regarding the impoundment of Plaintiff's vehicle.

6.　At the Administrative Hearing, counsel for the City of Chicago produced none of the reports previously requested by Plaintiffs; including the lab report proving that there were no narcotics in Plaintiffs vehicle. Also, none of the police officers involved in the incident

attended the hearing. Thus, counsel for the City of Chicago made Plaintiffs wait nearly a month to do nothing but dismiss a case that should have never had cause to be heard in the first place.

7. After the case against Plaintiff Uylonda Henderson was dismissed by the presiding Administrative Hearing Officer, the department of revenue issued a release form for her to pick up her vehicle from the City of Chicago Auto Pound. Plaintiff Uylonda Henderson did *not* pick up her vehicle from the auto pound immediately after her case concluded, however.

8. Instead, Plaintiffs Uylonda Henderson and Allisah Love rushed to the hospital in Aurora, where Plaintiff Uylonda Henderson's only brother had been on life support since November 15th, 2007. Plaintiff Uylonda Henderson's brother passed away the afternoon of November 19, 2007, while she and Plaintiff Allisah Love were busy preparing for and attending the Administrative Hearing for the release of her vehicle. See attached document.

9. Many of Plaintiff Uylonda Henderson's eight children did not have the opportunity to see their uncle in his final days due to difficulty in securing transportation for them to and from the hospital in Aurora.

10. On November 20, 2007, Plaintiffs Uylonda Henderson, Allisah Love, Eddie Brantley and Christopher Grooms went to the City of Chicago Auto Pound located at 10301 South Doty Avenue.

11. Plaintiff Uylonda Henderson's vehicle was brought to the front of the tow yard by one of the pound personnel. However, after sitting idle for nearly a month, Plaintiff's car would not start.

12. One of the auto pound personnel gave Plaintiff Uylonda Henderson's car a jump, but it did not last long enough to get her vehicle started.

13. Plaintiff Uylonda Henderson's son, Eddie Brantley, requested that he be able to jump his mother's car from his own vehicle; either by driving his car inside of the tow yard, or by pushing her car out to where his was; a distance of approximately twenty to thirty feet.

14. However, auto pound personnel refused to allow Plaintiff Uylonda Henderson's son to bring his car inside of the tow yard, or push his mother's car outside of the yard to give it a jump.

15. Auto pound personnel informed Plaintiffs that they would need to pay one of the tow trucks on site to pull Plaintiff Uylonda Henderson's vehicle out of the yard. When Plaintiff Allisah Love inquired with one of the tow truck drivers about the cost of towing a car twenty to thirty feet, she was told that it would cost a minimum of fifty dollars.

16. Having spent nearly two hours at the City of Chicago Auto Pound in an attempt to retrieve Plaintiff Uylonda Henderson's vehicle, Plaintiff Allisah Love sought to speak with a manager there at the auto pound to obtain permission for Plaintiff Eddie Brantley to push his mother's car out of the tow yard. After all, Plaintiff Uylonda Henderson did not owe the City of Chicago any money, Plaintiff Uylonda Henderson had a right to retrieve her property, and none of the paperwork received at the Administrative Hearing regarding the impoundment of her vehicle forewarned of any auto pound policy that would hinder her from retrieving her car in the present situation.

17. Plaintiffs Allisah Love and Christopher Grooms went to the trailer on site at the auto pound to look for a manager. Plaintiff Christopher Grooms waited outside of the trailer while Plaintiff Allisah Love went inside of the trailer, because earlier when Plaintiff Uylonda Henderson went inside of the trailer to show her paperwork, she was told that only one person per party could enter.

18. When Plaintiff Allisah Love went inside of the trailer and requested to speak with a manager, she was completely ignored by two women that were working behind a glass window. When Plaintiff Allisah Love made the same request again, she was rudely ignored again.

19. Then, a man who had been securing the trailer earlier, entered the trailer and asked Plaintiff Allisah Love what she wanted.

20. When Plaintiff Allisah Love told the man that she wished to speak with a manager, the man pointed to a sign on the wall that said only vehicle owners were allowed inside of the trailer.

21. As Plaintiff Allisah Love turned to leave, she asked the man for the manager's name. The man said that he could not give her the manager's name, but that he would get the manager for her.

22. Plaintiff Allisah Love then asked the man for his name, and he said Officer Muhammad.

23. When Plaintiff Allisah Love left the trailer, Officer Muhammad followed her out.

24. Wondering why he had followed her out of the trailer, Plaintiff Allisah Love turned to Officer Muhammad and asked if he was going to get the manager.

25. This time, Officer Muhammad ignored her and said nothing.

26. Plaintiff Allisah Love asked the same question a second time and Officer Muhammad said nothing.

27. Then Plaintiff Allisah Love told Plaintiff Christopher Grooms that they were refusing to allow her to speak with a manager and that this was ridiculous.

28. Plaintiff Allisah Love then told Officer Muhammad that if he was not going to get the manager she would just have to call the Office of Professional Standards to make a complaint.

29. As Plaintiff Allisah Love took out her phone and walked off with Plaintiff Christopher Grooms, Officer Muhammad took out a phone also, and called 911 to make a false report about Plaintiff Allisah Love, in order to thwart her complaint about him.

30. It took Plaintiff four calls to the Office of Professional Standards before she was successfully able to make her complaint, Log #1011098.

31. Plaintiff Allisah Love had also called 911 to request that a sergeant come to the scene.

32. When Sergeant David Glenn, #1246, arrived at the scene, he did not allow Plaintiff Allisah Love to speak, nor did he ask any questions. He said "Put the phone down and put your hands behind your back."

33. Then Police Officers Fisher, #5053, and Houston, #10276; who also had not asked anything about the incident, cuffed Plaintiff Allisah Love and put her in the back of their squad car.

34. When Plaintiffs Uylonda Henderson, Eddie Brantley and Christopher Grooms repeatedly asked why Plaintiff Allisah Love was being arrested, at first they were ignored. But finally Sergeant Glenn said that "He (Officer Muhammad) wants her arrested, so she's being arrested."

35. Plaintiff Christopher Grooms called his father and informed him of what was going on. He also let Sergeant Glenn speak to his father, after which Sergeant Glenn came to the back of the police car where Plaintiff Allisah Love sat and confirmed that he knew and even worked with Plaintiffs father.

36. Sergeant Glenn finally told Plaintiff Allisah Love what she was being charged with also: trespassing.

37. Plaintiffs Allisah Love, Uylonda Henderson, Eddie Brantley and Christopher Grooms all confirmed that Plaintiff Allisah Love had done nothing criminal, especially trespassing. In fact, they confirmed that she had never been told to leave the property or premises by Officer Muhammad.

38. Plaintiff Allisah Love also told Sergeant Glenn that for the period of time she was alone in the trailer, the security tapes could verify what was said inside.

39. Sergeant Glenn said that he was not about to hold court there at the auto pound.

40. When Plaintiff Allisah Love was taken to the Fourth District Police Station and cuffed to a wall in one of the holding rooms, she heard an officer in the hallway say that "Her brother Christopher Grooms was just arrested." (Referring to the incident on October 23, 2007)

41. Officers Fisher and Houston began typing their report via computer and sent it, generating RD# HN719256.

42. Shortly thereafter, a Sergeant Sutter came into the room and told Officers Fisher and Houston to retrieve the report and add additional charges to it to increase Plaintiff Allisah Love's bond.

43. Officers Fisher and Houston retrieved the report and upgraded the trespassing charge to criminal trespassing. They also added resisting arrest to the report.

44. Sergeant Sutter returned to the room again where Plaintiff Allisah Love was being held, and had a book in his hand. He cited to Officers Fisher and Houston that the City Auto Pound Property was also State supported property and could "up" the charge.

45. Later yet, Officer Fisher left and returned to the room and told Officer Houston that the Watch Commander, Captain McMahon, said to add a charge of "attempt to defeat."

46. Then Officers Fisher and Houston began arrogantly joking in front of Plaintiff Allisah Love about how "It seems that the people who do little or nothing get the book thrown at them, and the people who are hard core get off easy."

47. Altogether, the report generated by Officers Fisher and Houston regarding the arrest of Plaintiff Allisah Love was edited approximately two to three times.

48. This can be verified by the command functions stored on the hard drive of the computer these Officers used to generate RD# HN719256.

49. This is also the reason why Plaintiff Allisah Love requests that this honorable court grant this motion to preserve the hard drive of the computer used to generate the report against her, as it will show the malicious intent of the Police Department in falsely arresting Plaintiff, then trumping up charges against her in an effort to create a criminal record.

50. In the event that Defendants claim they do not remember which computer was used to generate RD# HN719256, Plaintiff requests that all hard drives from the computers in the holding rooms of the Fourth District Police Station be preserved.

51. Plaintiff Allisah Love was fingerprinted, jailed and later released on an i-bond on November 21, 2007.

52. After her release, Plaintiff Allisah Love attempted to obtain the star numbers of the officers involved in the incident.

53. Through research, Plaintiff Allisah Love discovered that the so called "Officer Muhammad" had given her a phony name. One of the supervisors named Ben at the City Auto Pound told Plaintiff Allisah Love that the officer on duty the evening of November 20, 2007, was named Officer Powell.

54. Ben also informed Plaintiff Allisah Love that Officer Powell was an off duty police officer contracted to do work at the City Auto Pound by a company called United Road.

55. When Plaintiff Allisah Love called United Road, she spoke with a supervisor named David Concoran who said that he would check into the incident that took place on November 20, 2007 at the City Auto Pound.

56. David Concoran also informed Plaintiff Allisah Love that the security camera footage is saved to a computer hard drive that is recycled as need be.

57. Plaintiff Allisah Love informed David Concoran that the footage from November 20th needed to be preserved regarding the charges against her and that she was filing a motion for preservation in federal court.

58. Thus, Plaintiff Allisah Love requests that this honorable court grant Plaintiffs motion to preserve the security camera hard drive from the City of Chicago Auto Pound and its contractor United Road.

59. The duty of a police officer is to serve and protect the community; and specifically to detain and apprehend individuals when there is cause; *not* to administer

punishment where they personally see fit in the attempt to obstruct a complaint being made against them or in retaliation for some other action.

60. On November 20, 2007, Plaintiff Allisah Love was arrested on false charges by members of the City of Chicago Police Department while attempting to assist Plaintiff Uylonda Henderson in the retrieval of her vehicle at the City of Chicago Auto Pound located at 10301 South Doty Avenue.

61. The arrest of Plaintiff Allisah Love was an act of retaliation against her attempt to make a complaint against a police officer, for her prior complaints against the City of Chicago Police Department, and for her involvement in federal case number 07C 6176; which was filed after the false arrest of her brother, Plaintiff Christopher Grooms and the unlawful search, seizure, detention and vehicle impoundment that he and the other Plaintiffs involved in this case endured.

62. Allisah Love contends that this motion is time very sensitive in regard to the preserving electronic communication that can make clear the events that transpired in the above described incident of November 20, 2007 which resulted in her false arrest.

**WHEREFORE,** Plaintiff respectfully requests that this honorable court grant PLAINTIFFS MOTION TO PRESERVE HARD DRIVE PLUS ENTRIES VIA COMPUTER FROM THE CITY OF CHICAGO FOURTH DISTRICT POLICE STATION AND THE SECURITY CAMERA HARD DRIVE FROM THE CITY OF CHICAGO AUTO POUND.

Respectfully Submitted on
behalf of all Plaintiffs,

_____
Allisah Love
Pro se Plaintiff

Allisah Love
P.O. Box 4853
Chicago, Illinois 60680
(312) 756-9329

**PROVENA**
Mercy Medical Center

1325 N. Highland Avenue
Aurora, Illinois 60506
(630) 859-2222

NAME _____
ADDRESS _____ DATE 11/18/07

Uylonda Henderson has a family member in critical condition since 11/15/07

D. Dunn Nsg Supervisor

REFILL: ___ TIMES

MAY SUBSTITUTE ☐ _____ M.D.
MAY NOT SUBSTITUTE ☐ _____ M.D.
DEA No. _____ ADDRESS _____

---

**PROVENA**   11/19/07
Mercy Medical Center

To whom it may concern,

Ms. Uylonda Henderson was at the bedside of Mr. Thurman during his stay in the ICU. Unfortunately Mr. Thurman has passed away

Thank you

Bob Thurman